Robert S. Green (SBN 136183)
Elizabeth C. Guarnieri (SBN 208733)
GREEN WELLING, LLP
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

Eric L. Zagar
James H. Miller
SCHIFFRIN & BARROWAY LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
ezagar@sbclasslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NAKHIMOVSKY, Derivatively on Behalf of Nominal Defendant ALTERA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DENIS M. BERLAN, ERIK CLEAGE, JOHN P. DAANE, PAUL NEWHAGEN, ROBERT W. REED, NATHAN M. SARKISIAN, RODNEY SMITH, and WILLIAM E. TERRY,<br><br>Defendants,<br><br>and<br><br>ALTERA CORPORATION,<br><br>Nominal Defendant. | Case No. C 06-3447<br><br>**SHAREHOLDER DERIVATIVE COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder's derivative action brought for the benefit of nominal defendant Altera Corporation ("Altera" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2. In gross breach of their fiduciary duties as officers and/or directors of Altera, the Individual Defendants (as defined herein) colluded with one another to:

   a. improperly backdate dozens of grants of Altera stock options to former Altera Chief Executive Officer Rodney Smith and several other Altera executives, in violation of the Company's shareholder-approved stock option plans;

   b. improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

   c. improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

   d. produce and disseminate to Altera shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3. As a result of the Individual Defendants' egregious misconduct, Altera has sustained millions of dollars in damages, and Smith and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court has supplemental jurisdiction over the state law claims

SHAREHOLDER DERIVATIVE COMPLAINT

1

asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5. Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

**PARTIES**

6. Plaintiff Michael Nakhimovsky is, and was at all relevant times, a shareholder of nominal defendant Altera.

7. Nominal defendant Altera is a Delaware corporation with its principal executive offices located at 101 Innovation Drive, San Jose, California 95134. According to its public filings, Altera manufactures, and markets: (1) programmable logic devices, or PLDs; (2) HardCopy® structured application-specific integrated circuit, or ASIC, devices; (3) pre-defined design building blocks known as intellectual property cores, or IP cores; and (4) associated development tools.

8. Defendant Rodney Smith ("Smith") served as Chairman of the Board from 1983 until his retirement in 2003 and as President and Chief Executive Officer of the Company from 1983 to November 2000.

9. Defendant John P. Daane ("Daane") has served as Chairman of the Board since May 2003, as a director of Altera since December 2000, and as President and Chief Executive Officer of the Company since November 2000.

10. Defendant Denis M. Berlan ("Berlan") served as Chief Operating Officer of the Company at all times relevant hereto.

11. Defendant Nathan M. Sarkisian ("Sarkisian") served as Chief Financial Officer of the Company at all times relevant hereto.

12. Defendant Erik Cleage ("Cleage") served as the Company's Vice President or Senior Vice President of Marketing at all times relevant hereto.

13. Defendant Paul Newhagen ("Newhagen"), a co-founder of Altera, has served as a director of Altera since 1987. Newhagen served as the Company's Vice President of Administration and as a member of the Audit Committee of the Board (the "Audit Committee") from 1994 to 1998.

14. Collectively, defendants Smith, Daane, Berlan, Sarkisian, Cleage, and Newhagen are referred to herein as the "Officer Defendants."

15. Defendant William E. Terry ("Terry") has served as a director of Altera since 1994. Terry served as a member of the Compensation Committee of the Board (the "Compensation Committee") at all times relevant hereto.

16. Defendant Robert W. Reed ("Reed") has served as a director of Altera since 1994. Reed served as a member of the Audit Committee of the Board (the "Audit Committee") at all times relevant hereto.

17. Collectively, defendants Terry, Reed, and Newhagen are referred to herein as the "Committee Defendants."

18. Collectively, the Officer Defendants and Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

19. By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair,

just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

21. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

    a.    exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.    exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    c.    exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

    d.    exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

    e.    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

22. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

> (1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and
>
> (2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –
>
>> (a) transactions are executed in accordance with management's general or specific authorization;
>>
>> (b) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

23. Altera's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things, directing the activities and reviewing the findings of the external auditors, and upon completion of the annual audit, reviewing the audited financial statements.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

24. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Altera and administered the Company's stock option plans.

SHAREHOLDER DERIVATIVE COMPLAINT
5

25. From 1996 to 2001, the Compensation Committee granted certain Altera stock options to the Officer Defendants, as follows:[1]

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| Smith | 12/17/96 | $35.00 | 200,000 |
| | 12/12/97 | $30.56 | 150,000 |
| | 12/16/98 | $52.0625 | 100,000 |
| | 12/14/99 | $45.375 | 200,000 |
| | 12/20/00 | $24.625 | 100,000 |
| Daane | 11/30/00 | $23.9375 | 1,500,000 |
| | 12/3/01 | $22.49 | 500,000 |
| Berlan | 12/17/96 | $35.00 | 150,000 |
| | 12/12/97 | $30.56 | 100,000 |
| | 12/16/98 | $52.0625 | 50,000 |
| | 12/14/99 | $45.375 | 100,000 |
| | 12/20/00 | $24.625 | 160,000 |
| | 12/3/01 | $22.49 | 250,000 |
| Sarkisian | 12/12/97 | $30.56 | 50,000 |
| | 12/16/98 | $52.0625 | 50,000 |
| | 12/14/99 | $45.375 | 100,000 |
| | 12/20/00 | $24.625 | 160,000 |
| | 12/3/01 | $22.49 | 220,000 |
| Cleage | 12/17/96 | $35.00 | 100,000 |
| | 12/12/97 | $30.56 | 40,000 |
| | 12/16/98 | $52.0625 | 100,000 |
| | 12/14/99 | $45.375 | 100,000 |
| | 12/20/00 | $24.625 | 160,000 |
| | 12/3/01 | $22.49 | 150,000 |
| Newhagen | 12/17/96 | $35.00 | 40,000 |
| | 12/12/97 | $30.56 | 20,000 |

26. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of Altera stock on the date of grant.

---

[1] Exercise prices and numbers of options are not adjusted for the Company's 2-for-1 stock splits effective January 7, 1997, May 20, 1999, and August 11, 2000.

SHAREHOLDER DERIVATIVE COMPLAINT
6

27. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

28. Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

29. In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Altera's stock price, as demonstrated in the following charts:

   a. Summary of Option Grants and Surrounding Stock Price Performance

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 12/17/96 | $35.00 | $37.8125 | $35.875 | 2.5% |
| 12/12/97 | $30.56 | $46.8125 | $34.375 | 12.5% |
| 12/16/98 | $52.0625 | $53.06375 | $60.875 | 16.9% |
| 12/14/99 | $45.375 | $53.875 | $50.375 | 11.0% |
| 11/30/00 | $23.9375 | $32.625 | $25.1875 | 5.2% |
| 12/20/00 | $24.625 | $27.1875 | $29.3125 | 19.0% |
| 12/3/01 | $22.49 | $25.05 | $23.37 | 3.9% |

b.  Stock Price Performance Surrounding Option Granted Dated 12/17/96



- 12/3/96: Stock closes at $37.8125
- 12/17/96: Options granted at $35.00
- 1/2/97: Stock closes at $35.875

c.  Stock Price Performance Surrounding Option Granted Dated 12/12/97



- 11/28/97: Stock closes at $46.8125
- 12/12/97: Options granted at $30.56
- 12/29/97: Stock closes at $34.375

d.  Stock Price Performance Surrounding Option Granted Dated 12/16/98



- 12/2/98: Stock closes at $53.06375
- 12/16/98: Options granted at $52.0625
- 12/31/98: Stock closes at $60.875

e.  Stock Price Performance Surrounding Option Granted Dated 12/14/99



- 11/30/99: Stock closes at $53.875
- 12/14/99: Options granted at $45.375
- 12/29/99: Stock closes at $50.375

  f. Stock Price Performance Surrounding Option Granted Dated 11/30/00



  g. Stock Price Performance Surrounding Option Granted Dated 12/20/00



  h. Stock Price Performance Surrounding Option Granted Dated 12/3/01



30. The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Altera stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans,

resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False Financial Statements

31. As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

    a. violated the terms of the Company's shareholder-approved stock option plans;

    b. violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

    c. violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

    d. produced and disseminated to Altera shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

32. The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

    a. Form 10-K for fiscal year ended December 31, 1996, filed with the SEC on March 27, 1997 and signed by defendants Smith, Sarkisian, Newhagen, Reed, and Terry;

    b. Form 10-K for fiscal year ended December 31, 1997, filed with the SEC on March 30, 1998 and signed by defendants Smith, Sarkisian, Newhagen, Reed, and Terry;

    c. Form 10-K for fiscal year ended December 31, 1998, filed with the SEC on March 30, 1999 and signed by defendants Smith, Sarkisian, Newhagen, Reed, and Terry;

    d. Form 10-K for fiscal year ended December 31, 1999, filed with the SEC on March 24, 2000 and signed by defendants Smith, Sarkisian, Newhagen, Reed, and Terry;

   e. Form 10-K for fiscal year ended December 31, 2000, filed with the SEC on March 8, 2001 and signed by defendants Smith, Daane, Sarkisian, Newhagen, Reed, and Terry;

   f. Form 10-K for fiscal year ended December 31, 2001, filed with the SEC on March 8, 2002 and signed by defendants Smith, Daane, Sarkisian, Newhagen, Reed, and Terry.

33. Furthermore, from 1996 to 2006, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

   a. disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

   b. filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

34. On May 9, 2006, Altera issued a press release which stated:

> Altera Corporation (NASDAQ:ALTR) today announced that, as a result of management's recent review of the company's stock option practices, and issues concerning options granted during the period 1996 through 2000, the company's board of directors has established a special committee of independent directors to review the company's historical stock option practices and related accounting. The special committee will be assisted by independent legal counsel and outside accounting experts. Management initiated its review following recent media reports regarding stock option practices at other companies. Although the impact to the company's historical financial statements is not yet known, the company does not expect the review to result in material changes to its historical revenues or non-option related operating expenses. In light of this review, the company will not be able to file its Form 10-Q for the first quarter of 2006, which is due on May 10, 2006. The company is not seeking a five-day extension to file its Form 10-Q because it does not believe it can complete its review by the end of the allowed extension period. Altera does not anticipate that these developments will change the timing of its second quarter business update, currently scheduled for release after the market closes on May 30, 2006.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

35. The Officer Defendants breached their fiduciary duties by:

   a. colluding with the Committee Defendants to backdate stock option grants;

b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

c. colluding with the Committee Defendants to produce and disseminate to Altera shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

36. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

37. The Committee Defendants breached their fiduciary duties by:

a. colluding with the Officer Defendants to backdate stock option grants;

b. colluding with the Officer Defendants to violate GAAP and Section 162(m);

c. colluding with the Officer Defendants to produce and disseminate to Altera shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d. colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

38. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

39. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited

SHAREHOLDER DERIVATIVE COMPLAINT
12

to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

40. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

41. Plaintiff is an owner of Altera common stock and was an owner of Altera common stock at all times relevant hereto.

42. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

43. As a result of the facts set forth herein, plaintiff has not made any demand on the Altera Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

44. The Board currently consists of seven directors: defendants Daane, Newhagen, Reed, and Terry, and directors Robert J. Finocchio, Jr., Kevin McGarity, and Susan Wang. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

    a.    Daane and Newhagen, because they are directly interested in the improperly backdated stock option grants complained of herein;

    b.    Terry, because as a member of the Compensation Committee he directly participated in and approved the misconduct alleged herein and is substantially likely to be held liable for breaching his fiduciary duties, as alleged herein. Moreover, by colluding with the Officer Defendants, as alleged herein, Terry has demonstrated that he is unable or unwilling to act independently of the Officer Defendants;

    c.    Newhagen and Reed, because as members of the Audit Committee they directly participated in and approved the misconduct alleged herein and are substantially likely to be held liable for breaching their fiduciary

duties, as alleged herein. Moreover, by colluding with the Officer Defendants, as alleged herein, Newhagen and Reed have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

45. Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

46. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

47. As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

48. As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

   a. colluding with the Committee Defendants to backdate stock option grants;

   b. colluding with the Committee Defendants to violate GAAP and Section 162(m);

   c. colluding with the Committee Defendants to produce and disseminate to Altera shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   d. colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

49. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

50. The Committee Defendants breached their fiduciary duties by:

    a.    colluding with the Officer Defendants to backdate stock option grants;

    b.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

    c.    colluding with the Officer Defendants to produce and disseminate to Altera shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

51. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

52. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

53. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

54. Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

55. The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Altera common stock.

56. As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT

57. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

58. The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

59. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B. Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C. Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: May 26, 2006

Respectfully submitted,

**GREEN WELLING, LLP**

Robert S. Green

Elizabeth C. Guarnieri
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Eric L. Zagar
James H. Miller
**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff*

## VERIFICATION

I, **Michael Nakhimovsky** hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _May 25, 2006_

_____
**MICHAEL NAKHIMOVSKY**